UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHAWN D. THOMAS,                              :
                                              :
                        Plaintiff,            :
                                              :
          -against-                           :
                                              :
WESTCHESTER COUNTY, CORRECT CARE              :          **OPINION AND ORDER**
SOLUTIONS LLC, WESTCHESTER COUNTY             :
CORRECTIONAL OFFICER VAL #1439,               :            12-CV-6718 (CS)
Individually and in his Official Capacity, DR. :
PAUL ADLER, Individually and in his Official  :
Capacity, and NEW YORK CORRECT CARE           :
SOLUTIONS P.C.,                               :
                                              :
                        Defendants.           :
------------------------------------------------------------X

Appearances:
Shawn D. Thomas
*Plaintiff* Pro Se

James C. Freeman
Kent Hazzard, LLP
White Plains, New York
*Counsel for Defendants Correct Care Solutions LLC, New York Correct Care Solutions P.C.,
and Dr. Paul Adler*

Seibel, J.

          Before the Court is the Motion to Dismiss of Defendants Correct Care Solutions LLC

("CCS"), New York Correct Care Solutions P.C. ("NYCCS"), and Dr. Paul Adler pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (Doc. 16.)  For the following reasons, Defendants'

Motion is GRANTED.

**I.   Background**

          For the purposes of the present Motion, the Court accepts as true the facts (but not the

conclusions) stated in Plaintiff's Amended Complaint ("AC"), (Doc. 8).

Plaintiff was incarcerated at the Westchester County Jail ("WCJ") in Valhalla, New York on August 9, 2011, (AC 3.1),[1] at which time he had an open wound in his ankle from a shooting at close range in April 2010,[2] which required daily bandage changing to prevent infection, (*id.* Exs. 4, 20). Prior to his incarceration, Plaintiff had twelve surgeries on his ankle, faced "life threatening" infections in his wound, and developed a chronic need for pain medication. (*Id.* Ex. 20.)

At his initial medical screening, Plaintiff informed the nurse that he was taking ten milligrams of Percocet three times daily, which was effective for his "severe pain." (*Id.* at 3.1.) The nurse responded that "we only give [M]otrin or [T]ylenol," and put Plaintiff on the list to see a doctor. (*Id.*) Plaintiff subsequently met with Dr. Paul Adler,[3] who refused to prescribe him stronger medication despite Plaintiff's assertion that Motrin was ineffective in alleviating his pain; Dr. Adler allegedly stated that, "[T]his department is cheap they'LL [*sic*] just prolong so it becomes someone else's problem sorry." (*Id.* at 3.1-3.2.) In response to Plaintiff's concern about the effect of taking extended doses of Motrin, Dr. Adler explained that switching between Tylenol and Motrin would avoid any liver damage. (*Id.* at 3.2.) Plaintiff further informed Dr. Adler that his injury required at least daily cleaning, and he alleges that CCS failed to clean the wound on "numerous occasions," "causing . . . an infection which is now a[n] ulcer on [his] right ankle heel injury." (*Id.*) Plaintiff also specifically alleges that two nurses refused to change his bandages on January 3, 2012. (*Id.* Ex. 4.)

---

[1] Page 3.1 refers to the first of the three pages of the AC's "Facts" section.

[2] Plaintiff alleges that he told the nurse at his medical screening on August 10, 2011, that he had been shot in the heel two months previously, (AC 3.1), but the exhibits he attaches to the AC – including medical records from North Bronx Healthcare Network, (*id.* Exs. 5, 6), and Plaintiff's own statement, (*id.* Ex. 20) – make clear that the shooting occurred approximately fifteen months before his incarceration.

[3] Plaintiff states in his reply brief that Dr. Adler was removed as medical director at WCJ for drinking alcohol on the job and bringing contraband into the facility. (*See* Plaintiff['s] Memorandum of Law in Opposition to Defendant[s'] Motion to Dismiss, (Doc. 21), 8.) This allegation is not contained in the AC, but even if it were, it is unsupported by facts and, in any event, irrelevant.

On August 21, 2011, Plaintiff alleges that he suffered further injury to his ankle when a corrections officer closed a door on him.  (*Id.* at 3.2.)  He immediately requested medical attention but did not receive it until thirty minutes later, whereupon he was given Motrin and was scheduled for an X-ray with an outside provider.  (*Id.*; *see id.* Exs. 3, 15.)  On August 23, 26, and 29, 2011, Plaintiff received X-rays of his foot, which revealed a previous fracture of the heel bone in the process of healing.  (*Id.* Exs. 10, 12, 13.)  Plaintiff alleges that he did not receive the X-rays of his chest, lower back, and lower neck that he requested following the door incident.  (*Id.* Ex. 18.)  Plaintiff also received two orthotic shoes on August 23, 2011, (*id.* Ex. 2), but he alleges that he has not yet received the physical therapy that he requires for his injury, (*id.* at 3.3).

Plaintiff brings a claim against CCS, NYCCS, and Dr. Adler under 42 U.S.C. § 1983 for deliberate indifference to his medical needs, as well as a *Monell* claim against CCS and NYCCS for engaging in a pattern or practice of constitutional violations.  (*See id.* at 3.3.)

## II.  Legal Standard

### A.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570).[4]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[4] Defendants erroneously cite to a case that relies on the antiquated "no set of facts" pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *overruled by Twombly*, 550 U.S. at 563.  (Defendant's [*sic*] Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint ("Ds' Mem."), (Doc. 18), 4.)  As the Supreme Court stated in *Twombly*, the "no set of facts standard" "has earned its retirement. . . . [and] is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."  In the future, Defendants should cite the current legal standard for evaluating Rule 12(b)(6) motions set forth in *Twombly* and *Iqbal*.  Indeed, given that the correct standard is more favorable to Defendants than the *Conley* standard, defense counsel's reference to the old standard is baffling.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  But while pleadings of a *pro se* party should be read "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)), dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly

failed to meet minimum pleading requirements, *see Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d

Cir. 1997); *accord Honig v. Bloomberg*, No. 08-CV-541, 2008 WL 8181103, at *4 (S.D.N.Y.

Dec. 8, 2008), *aff'd*, 334 F. App'x 452 (2d Cir. 2009).[5]

B. *Documents Considered on a Motion to Dismiss*

When deciding a motion to dismiss, the Court's "review is limited to the facts as asserted

within the four corners of the complaint, the documents attached to the complaint as exhibits,

and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet

Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

There are limited circumstances, however, when it is appropriate for a court to consider

documents outside of the complaint on a motion to dismiss. *See Weiss v. Inc. Vill. of Sag

Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (court may properly consider documents

"integral" to complaint, documents relied upon in drafting complaint, public documents, and

facts of which judicial notice may be taken).  When matters outside the pleadings that do not fall

into these limited categories are included with a response to a 12(b)(6) motion, "a district court

must either exclude the additional material and decide the motion on the complaint alone or

convert the motion to one for summary judgment . . . and afford all parties the opportunity to

present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (internal

quotation marks omitted).

Here, Defendants submitted the Affidavit of Paul Adler, D.O., (Freeman Decl. Ex. C),[6]

with their motion papers, stating only that extrinsic documents that are integral to Plaintiff's

claims may be considered on a Rule 12(b)(6) motion.  (Ds' Mem. 5 (citing *Cortec Indus., Inc. v.*

---

[5] Copies of all unpublished decisions cited herein will be sent to the *pro se* Plaintiff, along with a copy of this Opinion and Order.

[6] "Freeman Decl." refers to the Declaration of James C. Freeman.  (Doc. 17.)

*Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).)  This is a correct statement of the law, but it has no application to the Adler Affidavit – a factual affidavit based on Adler's personal knowledge – which is not integral to Plaintiff's claims.  *See Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) (document considered "integral" where plaintiff has "(1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.") (internal quotation marks omitted).  I thus cannot consider the facts contained in the Adler Affidavit without converting the instant Motion to one for summary judgment,[7] *see Friedl*, 210 F.3d at 83, which I decline to do.[8]  Accordingly, I will consider only the factual allegations in Plaintiff's AC and the exhibits attached thereto in assessing the plausibility of his claims.

## III.  Discussion

### A.  Deliberate Indifference

"A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care . . . arises from the Eighth Amendment's prohibition of cruel and unusual punishment."  *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (internal quotation marks omitted).  While prison officials must ensure that prisoners[9] receive adequate medical care,

---

[7] Local Rule 12.1 requires that a represented party moving to dismiss a *pro se* complaint under Rules 12(b) or 12(c) provide notice to the *pro se* litigant if the represented party refers to matters outside of the pleadings in its motion, thus making it possible that the Court could convert the motion to one for summary judgment.  As far as the Court can tell, defense counsel did not comply with this rule and failed to provide Plaintiff with the required notice set forth in the text of Local Rule 12.1.

[8] Defendants also include in the statement of facts in their Memorandum of Law, (*see* Ds' Mem. 2-4), numerous "facts" for which they provide no citation but which apparently come from medical records not provided to the Court (or, presumably, to Plaintiff).  Even if I could consider facts outside the AC on a motion to dismiss, which I cannot, I would have to disregard sourceless "facts" provided only in a memorandum of law.  *See Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence.").

[9] The AC does not state whether Plaintiff is a pre-trial detainee or a convicted prisoner.  I may take judicial notice, however, of the fact that Plaintiff was a federal pre-trial detainee at the relevant times.  (Indeed, his criminal case is assigned to me.  *See United States v. Hardy*, No. 11-CR-629 (CS) (S.D.N.Y. filed Aug. 2, 2011).)  Although a deliberate indifference claim must be brought under different constitutional provisions depending on the Plaintiff's status – the Eighth Amendment for convicted prisoners and the Fourteenth Amendment for pre-trial detainees – the

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994), "not every lapse in medical care is a constitutional wrong," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  "Rather, a prison official violates the Eighth Amendment only when two requirements" – one objective and one subjective – "are met."  *Id.* (internal quotation marks omitted).

    1.  <u>Objective Prong</u>

To satisfy the objective requirement, Plaintiff must allege that he was "actually deprived of adequate medical care," *id.* ("[T]he prison official's duty is only to provide reasonable care."), and "that the alleged deprivation of medical treatment [wa]s . . . sufficiently serious – that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain," *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted); *see Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("The standard for Eighth Amendment violations contemplates a condition of urgency that may result in degeneration or extreme pain.") (internal quotation marks omitted).  The inquiry is "fact-specific" and "must be tailored to the specific circumstances of each case."  *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).  Relevant factors include:  "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'"  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702).

Where the inadequacy alleged is the medical treatment given, "the seriousness inquiry is narrower. . . . [If] the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the

---

standard for evaluating claims of deliberate indifference is the same under both amendments.  *See Caiozzo*, 581 F.3d at 69.

challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  *Goris v. Breslin*, 402 F. App'x 582, 584-85 (2d Cir. 2010) (summary order) (internal quotation marks omitted); *see Smith*, 316 F.3d at 186-87 (among other things, court must look at reasons for and effect of delay in treatment); *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.").

Plaintiff does not allege that Defendants failed to provide any medical treatment.  Indeed, Plaintiff's AC details the ongoing medical treatment that he received at WCJ, including over-the-counter medication for his chronic pain, (AC 3.1-3.2), orthotic shoes, (*id.* Ex. 2), and visits to outside providers for X-rays, (*id.* Exs. 10, 12, 13).  Plaintiff alleges that interruptions in his treatment – specifically, Defendants' failure to consistently change his bandages – exacerbated his condition and resulted in an infection and ulcer in the open wound on his foot.  "[T]he failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment."  *Smith*, 316 F.3d at 186; *accord Chance*, 143 F.3d at 702 ("[I]f prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment."); *Odom v. Kerns*, No. 99-CV-10668, 2008 WL 2463890, at *7 (S.D.N.Y. June 18, 2008) (cuts and open wounds that eventually became infected could be serious medical needs, even absent allegations that plaintiff had chronic pain or inhibition of daily activities); *cf. Brock*, 315 F.3d at 163-64 (failure to properly treat a painful scar, which "d[id] not present a risk of

serious harm as would an infected wound," was sufficiently serious).  Moreover, Plaintiff alleges

that the chronic pain resulting from his ankle injury and open wound also constitutes a serious

medical condition, and courts have held that injuries causing chronic and extreme pain can be

sufficiently serious.  *See Johnson*, 412 F.3d at 403; *Chance*, 143 F.3d at 702.  Accordingly,

Plaintiff's assertions of an infection in his open wound and chronic pain from his ankle injury

plausibly allege sufficiently serious medical conditions.[10]

### 2.  Subjective Prong

The subjective component requires that the prison official acted with a "sufficiently

culpable state of mind."  *Salahuddin*, 467 F.3d at 280.  Specifically,

> [a] prison official cannot be found liable . . . unless the official
> knows of and disregards an excessive risk to inmate health or
> safety; the official must both be aware of facts from which the
> inference could be drawn that a substantial risk of serious harm
> exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  "This 'deliberate indifference' element is equivalent to the familiar

standard of 'recklessness' as used in criminal law."  *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d

Cir. 2002) (citing and quoting *Farmer*, 511 U.S. at 839-40).

Although Plaintiff's infection may be a sufficiently serious medical condition, he also

"must demonstrate that the defendants acted or failed to act while actually aware of a substantial

risk that serious inmate harm would result."  *Farid v. Ellen*, 593 F.3d 233, 248 (2d Cir. 2010)

---

[10] To the extent that Plaintiff asserts that he experienced pain from the door incident affecting his chest, lower back, and neck, (*see* AC Ex. 18 ("[O]fficer Val #1439 closed me up between the sliding doors which causes severe pain to my foot, chest, lower back, and lower neck.  And I only receive the x-ray for my foot.")), Plaintiff appears only to allege pain in these areas resulting from this specific incident – particularly as the AC and its numerous attachments contain no other allegations of chest, back, or neck pain – and not the kind of chronic pain courts have found sufficient to allege a serious medical condition.  *See Walker v. Dep't of Corr. Serv.*, No. 11-CV-993, 2012 WL 527210, at *1 (S.D.N.Y. Feb. 14, 2012) ("A determination of whether an incident is sufficiently serious to invoke the Eighth Amendment requires the Court to assess the duration of the condition and the potential for serious physical harm.  Where a medical need is at issue, an Eighth Amendment violation may be sustained only where plaintiff proves that it was a condition of urgency, one that may produce death, degeneration, or extreme pain.") (citation and internal quotation marks omitted).

(alterations and internal quotation marks omitted).  Plaintiff has not set forth any facts plausibly showing that any Defendant's occasional failure to change his bandages was accompanied by the requisite state of mind.  Indeed, his sole allegations are that he spoke with prison officials and nurses who refused to change his bandages on January 3, 2012, (AC Ex. 4), and that CCS failed to change his bandages on "numerous occasions," (*id.* at 3.2).[11]  Even affording Plaintiff the special solicitude due *pro se* litigants, there are simply no facts rendering it plausible that Defendants acted with a state of mind akin to criminal recklessness.  *See Phelps*, 308 F.3d at 186.  While not changing Plaintiff's bandages daily may potentially amount to negligence, nothing alleged in the AC makes it plausible that Defendants knew of and consciously disregarded an excessive risk to Plaintiff's health and safety – particularly as Plaintiff received ongoing dressing changes and treatment, and admitted to missing clinic visits that may account for some instances when his bandages went unchanged.  Accordingly, Plaintiff's allegations are insufficient to state a plausible claim for deliberate indifference.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in . . . treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness – an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm.") (alteration and internal quotation marks omitted).

Further, Plaintiff's allegation that Motrin and Tylenol were insufficient to alleviate his chronic pain also does not state a plausible claim for deliberate indifference.  The law is clear

---

[11] The AC further admits that while "[Plaintiff] ha[s] a[n] order to go to the clinic every day," he missed going to the clinic for several days prior to and on August 27, 2011.  (*Id.* Ex. 18.)  Nurse's notes dated August 22, 2011 indicate that he was receiving daily bandage changes.  (*Id.* Ex. 15.)

that a "mere disagreement over the proper treatment" is not actionable, *Chance*, 143 F.3d at 703, and courts have found that treating pain with over-the-counter, as opposed to prescription, medication is a disagreement over treatment that does not rise to the level of deliberate indifference, *see, e.g.*, *Hill*, 657 F.3d at 123 (2d Cir. 2011) (prescribing Motrin rather than stronger pain medication to treat broken wrist, with no concomitant allegation of "a culpable state of mind," falls short of claim for deliberate indifference); *Reyes v. Gardener*, 93 F. App'x 283, 284 (2d Cir. 2004) (holding that alternative medical plan incorporating weaker pain medication to treat inmate was "mere disagreement over the proper treatment") (internal quotation marks omitted); *Rush v. Fischer*, No. 09-CV-9918, 2011 WL 6747392, at *3 (S.D.N.Y. Dec. 23, 2011) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs.").[12]

Dr. Adler's alleged response to Plaintiff's request for stronger pain medication and provision of his outside doctor's contact information – "[T]his department is cheap they'LL [*sic*] just prolong so it becomes someone else's problem sorry," (AC 3.2) – does not plausibly indicate that *Dr. Adler* knew of and disregarded an excessive risk to Plaintiff's health or safety, *see Farmer*, 511 U.S. at 837 – particularly in light of Plaintiff's receipt of non-prescription pain medication and ongoing medical attention. Although the Second Circuit has held that allegations of personal financial incentive are sufficient to state a claim for deliberate indifference, *see Chance*, 143 F.3d at 704 (claim survived motion to dismiss where two defendants recommended

---

[12] Even if Plaintiff had plausibly alleged chronic chest, lower back, and lower neck pain, the failure to X-ray these areas at his request is not actionable as it is also a mere disagreement over proper treatment. *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (allegation of failure to X-ray finger "does not rise to the level of a constitutional violation" because "disagreements over medications [and] diagnostic techniques (*e.g.*, the need for X-rays) . . . implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."). The same is true of Plaintiff's allegation that he has not received the necessary physical therapy for his ankle injury. *See O'Diah v. Mawhir*, No. 08-CV-332, 2012 WL 4482579, at *9 (N.D.N.Y. Sept. 5, 2012) (prisoner's allegation that he required physical therapy was disagreement over proper treatment).

a treatment option "not on the basis of their medical views, but because of monetary incentives," which, if true "would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment"), *Chance* can be distinguished from the case at bar.  First, the claim survived under the previous, more lenient standard for evaluating a motion to dismiss – whether the plaintiff could prove "no set of facts" that would entitle him to relief, *see Conley*, 355 U.S. at 45-46 – and the *Chance* court noted that dismissal of the plaintiff's claim would be inappropriate there even if "[it] [thought] it highly unlikely that [plaintiff] [would] be able to prove his allegations" of the defendants' ulterior financial motives, *Chance*, 143 F.3d at 704.  Further, the allegation that the treating physician personally had a financial incentive in recommending a particular course of treatment – and thus was potentially reckless in treating the plaintiff – differs substantially from Plaintiff's allegation here that his treating physician stated only that the Department of Corrections (apparently as opposed to himself) was cheap and would rather have Plaintiff be someone else's problem.  Finally, the *Chance* plaintiff alleged that there was legitimate disagreement among physicians about how to treat his condition, whereas Plaintiff has failed to allege that any other medical professional questioned Dr. Adler's decision to treat Plaintiff's pain with over-the-counter medication.

For the reasons stated above, Defendants' Motion is granted with respect to Plaintiff's deliberate indifference claim.

B.  Monell *Claim*

Absent an underlying constitutional violation, a *Monell* claim cannot lie.  *See Bolden v. Cnty. of Sullivan*, No. 11-CV-4337, 2013 WL 1859231, at *2 (2d Cir. May 6, 2013) (summary order) ("[B]ecause the district court properly found no underlying constitutional violation, its

decision not to address the County defendants' liability under *Monell* was correct."); *Segal v.*

*City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of

action . . . it *extends* liability to a municipal organization where that organization's failure to

train, or the policies or customs that it has sanctioned, led to an independent constitutional

violation.") (emphasis in original).  Even if the underlying claims had survived, however,

Plaintiff has not plausibly alleged a *Monell* claim against CCS and NYCCS.[13]  Plaintiff alleges

that CCS failed to change his bandages, but there are no allegations that this failure was the

result of a formal policy, a widespread practice, or a failure to properly train or supervise

employees.  Rather, Plaintiff relies exclusively on an investigation report dated November 19,

2009[14] issued by the Department of Justice ("Investigation Report") detailing in part "Medical

Care Deficiencies" found at WCJ – specifically in infection control, dental care, mental health

care, and the medical grievance process,[15] (AC Ex. 17, at 19-27), without alleging that CCS,

NYCCS, or any of its policymakers were the subject of or privy to the results of the Investigation

Report.  Neither CCS nor NYCCS is mentioned in the Investigation Report, (*see id.* Ex. 17);

Plaintiff's allegations occurred nearly two years after the Investigation Report was issued; and

the medical care policies found deficient at WCJ – including inadequate treatment of infectious

---

[13] I assume without deciding for the purposes of this Motion that *Monell* would apply to private entities providing care to state inmates, such as CCS or NYCCS.  *See Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2012) (accepting plaintiff's argument that defendant New York Medical College acted under color of state law by virtue of its agreement to administer medical services to inmates at WCJ).

[14] Defendants argue in their brief that CCS/NYCCS did not become responsible for inmate healthcare until July 26, 2010.  (Ds' Mem. 10.)  I must ignore this allegation because it is not in or integral to the AC, and because it appears only in Defendants' Memorandum of Law.

[15] Although Plaintiff alleges that he was unable to file a grievance at WCJ, (*see* AC Exs. 18-19), the grievance in question relates to his claims against Defendant Officer Val #1439 arising from the incident in which he was caught in a door and does not implicate NYCCS or CCS, (*see id.* Ex. 3).

diseases and lack of dental care, (*id.* Ex. 17, at 19-22) – are unlike the deprivation of medical

care Plaintiff alleges here.[16]  Plaintiff's *Monell* claim is accordingly dismissed.

C.  *Leave to Amend*

Although *pro se* plaintiffs are generally given leave to amend a deficient complaint, *see*

*Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (per curiam), a district

court may deny leave to amend when amendment would be futile because the problem with the

claim "is substantive . . . [and] better pleading will not cure it," *Cuoco v. Moritsugu*, 222 F.3d 99,

112 (2d Cir. 2000).  While courts should be more lenient when considering a *pro se* party's

motion to amend than when considering that of a represented party, *see In re Sims*, 534 F.3d 117,

133 (2d Cir. 2008), leave to amend is properly denied where all indications are that the *pro se*

plaintiff will be unable to state a valid claim, *see Valle v. Police Dep't Cnty. of Suffolk Cent.*

*Records*, No. 10-CV-2847, 2010 WL 3958432, at *2 (E.D.N.Y. Oct. 7, 2010).  I find that to be

the case here, where Plaintiff's AC and its many attachments contain no factual allegations

rendering either of his claims plausible.  Further, Plaintiff has neither asked to amend again nor

otherwise indicated that he is in possession of facts that could cure the deficiencies identified in

this Opinion.  Thus, because Plaintiff has already had the opportunity to amend his Complaint,

and because it appears to the Court that amendment would be futile, I decline to *sua sponte* grant

leave to amend again.  *See Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir.

2010) (summary order) (denial of leave to amend affirmed where *pro se* plaintiff had already had

opportunity to amend once and made no specific showing as to how he would remedy defects in

---

[16] The Investigation Report notes that a medical intake was performed in an open area within the sight and sound of other inmates and WCJ staff.  (AC Ex. 17, at 19 n.22.)  Although Plaintiff alleges that his intake was also performed in an open area where anyone could overhear what was said, (*id.* at 3.1), the Investigation Report found that this "appeared to be an isolated incident," and thus does not constitute a custom or practice sufficient to allege a plausible *Monell* claim.  Further, while the Court does not condone such a breach of Plaintiff's privacy and the medical staff's professional obligations, it would not meet either the objective or subjective prongs of the deliberate indifference test.

complaint); *cf. Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court did not exceed its discretion in not *sua sponte* granting leave to amend where Plaintiff had already amended complaint once and amendment would have been futile).

*    *    *

Although I am granting Defendants' Motion to Dismiss, defense counsel should take no pride in his professional performance in this case.  He:  (1) cited an outdated legal standard that is less favorable to his clients than the applicable standard; (2) submitted an affidavit that cannot be considered on a motion to dismiss; (3) apparently violated Local Rule 12.1 by not providing (as far as the Court can tell) the notice required to be provided to a *pro se* plaintiff when the moving party refers to matters outside of the pleadings on a Rule 12 motion; (4) referred in his Memorandum of Law to "facts" that cannot be found in the record; and (5) apparently violated Local Rule 7.2 by not providing to Plaintiff (as far as the Court can tell) printed copies of cases cited in his Memorandum of Law that are unreported or reported only on computerized databases.

## IV.  <u>Conclusion</u>

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.  The Clerk is respectfully directed to terminate the pending Motion, (Doc. 16), and terminate CCS, NYCCS, and Dr. Adler from the case.

**SO ORDERED.**

Dated:  July 3, 2013
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.